CONTINENTAL & COMMERCIAL NAT. BANK, of Chicago, Ill., Respondent, v. JEFFERSON et al, Appellants.

(215 N. W. 533.)

(File No. 6323.   Opinion filed Sept. 26, 1927.)

1.  **Bills and Notes—Note with Interest Payable Semiannually Held Negotiable, Though Providing for Increased Interest in Case of Default in Payments (Rev. Code 1919, § 1705).**

    Note payable on named date to order of named payee, with interest at 8 per cent payable semiannually, held not non-negotiable because it was not a promise to pay a sum certain in money, within Rev. Code 1919, § 1705, because of provision that if principal or interest was not paid when due it should bear interest at rate of 10 per cent.

2.  **Pledges—Holder of Collateral Notes Could Not Enforce Mortgage Lien for Amount Exceeding Amount Due from Pledgor.**

    Holder of collateral notes secured by chattel mortgage as against defenses that defendants' signature to note and mortgage was secured by fraud, duress and deceit could not enforce mortgage lien for amount in excess of amount due it from payee of notes on obligation to which note was taken as collateral, regardless of amount due on paper when collateral was taken.

3.  **Bills and Notes—Evidence that Note Was Procured by Fraud and Duress Held Admissible, Throwing Burden on Plaintiff to Prove it Held in Due Course (Rev. Code 1919, §§ 1756, 1759, 1763).**

    In action on note held by plaintiff as collateral to loan to payee thereof, defendant should have been permitted, in view of Rev. Code 1919, §§ 1756, 1759, 1763, to prove that notes and mortgage were secured by fraud, duress, and deceit thereby throwing burden on plaintiff to prove it was a holder in due

course and amount and extent to which it was entitled to rank as such holder.

4. **Bills and Notes—When Evidence Establishes Defective Title, Holder Claiming in Due Course Must Prove Claim.**

When evidence establishes that the title of the party negotiating note was defective, holder claiming to be due course holder · must make claim good by preponderance of evidence.

5. **Bills and Notes—Holder of Negotiable Instrument May Sue Thereon, ˚Regardless of Due Course Holding (Rev. Code 1919, § 1755).**

In view of Rev. Code 1919, § 1755, the holder of a negotiable instrument may sue thereon, regardless of whether he is a due course holder.

6. **Bills and Notes—Holder Need Not Plead or Prove Bona Fides; Only When Plaintiff Faces Defenses Not Good Against Holder in Due Course Must He Prove Bona Fides (Rev. Code 1919, § 1763).**

Holder of note need not plead nor prove he is holder in due course, since such issue becomes material only when he is faced with defenses to paper which are good against a holder but not good against a holder in due course, and at such stage burden is placed on him by Rev. Code 1919 § 1763, to prove he is due course holder.

---

Note.—See, Headnote **(1)**, American Key-Numbered Digest, Bills and notes, Key--No. 158, 8 C. J. Sec. 253; **(2)** Pledges, Key-No. 58(6), 31 Cyc. 863, 866; **(3)** Bills and notes, Key-No. 497(2, 5), 505, 8 C. J. Secs. 1291, 1292, 1341, 1345; **(4)** Key-No. 497(2), 8 C. J. Secs. 1290, 1291; **(5)** Key-No. 443(1), 8 C. J. Secs. 1083, 1171, 1291 (Anno.).

As to negotiability of note providing for increased interest after maturity, see annotation in L. R. A. 1915B, 1216; 2 A. L. R. 139; 3 R. C. L. 901; 1 R. C. L. Supp. 913; 6 R. C. L. Supp. 204.

On the question as to when holder of ·instrument is deemed to be holder in due course, see 3 R. C. L. 1037; 4 R. C. L. Supp. 231; 6 R. C. L. Supp. 215.

·On Rev. Code 1919, Sec. 1705, see annotations 5 U. L. A., pg. 7.

Appeal from ·Circuit Court, Beadle County; Hon. Alva E. Taylor, Judge.

·Action by the Continental & Commercial National Bank of Chicago, Ill., against Lenna M. Jefferson and others. From a judgment for plaintiff, and from an order overruling defendants' motion for a new trial, defendants Lenna M. Jefferson and Charles C. Jefferson appeal. Judgment and order reversed, and case remanded for new trial.

*McCoy & McCoy* and *Gardner & Churchill*, all of Huron, for Appellants.

*Null & Royhl*, of Huron, for Respondent.

CAMPBELL, P. J.    Plaintiff in its complaint, after alleging its corporate capacity, the corporate capacity of the defendant James Valley Bank, and the official capacity of defendant F. R. Smith, as superintendent of banks for the state of South Dakota, alleged the insolvency of the defendant James Valley Bank and its taking over by the defendant Smith, superintendent of banks, January 8, 1924, and alleged that March 1, 1923, defendant Lenna M. Jefferson executed and delivered to defendant James Valley Bank two certain promissory notes dated on that day, for $7,500 each, due in 1 year, indorsed and guaranteed by the defendant C. C. Jefferson; that on the same day, and as part of the same transaction, the defendants Jefferson executed, acknowledged, and delivered to the defendant James Valley Bank a certain real estate mortgage to secure said notes; that thereafter on or about March 9, 1923, defendant James Valley Bank, for value, sold, indorsed, and delivered said notes and assigned said mortgage to plaintiff; that plaintiff continues to be the owner and holder thereof; that no part of the same has been paid; that default exists in the notes and mortgage; that the amount due thereon is $18,851.50; and that no previous proceedings at law or in equity had been had for its recovery.    The prayer of the complaint was in the usual form for determination of the amount due on the notes and money judgment thereon and for foreclosure.

The defendants F. R. Smith, superintendent of banks, and James Valley Bank of Huron by answer admitted the allegations of the complaint and consented to entry of judgment as therein prayed.    The defendant Lenna M. Jefferson answered, admitting the official capacity of the defendant Smith and the corporate capacity of the two banks, but denying every other allegation of the complaint, and admitting that she executed notes and a mortgage similar to those mentioned in the complaint, but alleging, by way of affirmative defense, that her signatures to said notes and mortgage were secured by fraud, duress, and deceit, and pleading the facts upon which she relied to constitute such fraud, duress, and deceit, and praying for the dismissal of the action.    The defendant C. C. Jefferson answered separately, making the same

admissions as to formal matters and the same general denial, and alleging that he signed the guaranty indorsed upon said notes upon the express condition precedent that the same should not be valid nor go into effect until the defendant James Valley Bank first procured the signatures of one Montank to each of said guaranty contracts, and that said bank failed to perform said condition precedent.

At the trial plaintiff produced and proved the notes and the indorsements thereon and the mortgage and the assignment thereof, and an officer of plaintiff testified in plaintiff's behalf as follows:

"I am familiar with the transaction between plaintiff and the James Valley Bank of Huron, S. D. I am familiar with the loans that the James Valley Bank has made with plaintiff. These loans were secured by collateral. I have seen the promissory notes, Exhibits 2 and 3, before. They are a part of the security deposited with plaintiff by the James Valley Bank as collateral for loans made to the James Valley Bank. I am familiar with the mortgage, Exhibit 1. That instrument was delivered to plaintiff with the notes, Exhibits 2 and 3, as a part of the collateral security. The transaction between the plaintiff and the James Valley Bank, in which these notes and said mortgage were deposited as security, has not been closed up. There is still a balance due from the James Valley Bank to plaintiff. The plaintiff is the present holder of the notes, Exhibits 2 and 3, and the mortgage, Exhibit 1. The plaintiff received these notes as collateral some time prior to March 1, 1924."

The form of the notes in question was as follows:

"Huron, South Dakota, March 1, 1923. No. 31916.

"March 1, 1924, after date, without grace, I promise to pay to the order of James Valley Bank, Huron, South Dakota, $7,500.00 (seventy five hundred dollars), with interest at the rate of 8 per cent per annum, payable semiannually, from date until due.

"Should any of the principal or interest not be paid when due, it shall bear interest at the rate of 10 per cent per annum, payable semiannually, until paid. The respective makers, sureties, and indorsers hereof severally waive presentment for payment and protest.                    Lenna M. Jefferson."

After making the proof above set out plaintiff rested, whereupon the defendant Lenna M. Jefferson was sworn as a witness for the defendants, and after some preliminary questions was asked this question:

"You may state the circumstances under which you signed these notes, if you did sign them."

Whereupon plaintiff interposed the following objection:

"Objected to as incompetent, irrelevant, and immaterial, calling for the opinion and conclusion of the witness, an attempt to change and vary the terms of a written contract by oral evidence, and for the further reason that no foundation has been laid upon which the defense can be urged as against the plaintiff, the Continental & Commercial National Bank, a bona fide holder under the Negotiable Act of the state of South Dakota, and that before the said defense can be made under any construction it is necessary that this defendant or defendants show as a foundation for this testimony that the plaintiff had knowledge or notice of facts or conditions sufficient to charge him with knowledge or notice of this defense, or of such facts or conditions as would place him or it in a position where it was charged with such knowledge or notice of this defense or defenses, and that it is necessary that the defendant make an affirmative proof thereof."

The court sustained the objection, whereupon defendants offered to prove by the witness Lenna M. Jefferson the various matters and facts set out in her answer as an affirmative defense, to which offer plaintiff objected as follows:

"Plaintiff objects to the offer upon the ground that no proper foundation has been laid for the receipt in evidence of the matters contained in this offer; it now appears that the plaintiff is the holder of the notes in due course, and not open to the suggested defense; upon the further ground that the testimony is wholly immaterial, does not constitute a defense to the notes."

This objection was also sustained. The defendant Charles C. Jefferson was then sworn as a witness, and, after objections to several questions were made and sustained, an offer was made to prove by him the matters alleged in his answer by way of affirmative defense, to which offer the following objection was made:

"To this offer plaintiff objects upon the ground that it now appears that the plaintiff was the holder of the notes in due course,

having acquired them before maturity and for value, and no foundation has been laid to impeach the good faith of the plaintiff or its title to this paper, and that the defense is not open to the defendant at this time to raise the question of the noncompletion of the instrument before delivery, it appearing that this defendant signed the guaranty on the back of the notes and delivered the notes to the James Valley Bank; that there was nothing on the face of the transaction to put the plaintiff upon inquiry as to the completeness of the contract."

This objection was likewise sustained. The defendants rested, and the court made findings and conclusions in favor of plaintiff upon all the issues and entered judgment thereon granting the relief prayed for in the complaint, from which judgment and the order overruling their motion for a new trial the defendants Jefferson appeal.

The case turns upon the correctness of the ruling of the trial court rejecting the evidence offered by the appellants Jefferson. Respondent maintains these rulings to have been correct because appellants did not first prove or offer to prove that respondent was not a due course holder of the paper in question.

[1] Appellant contends, first, that respondnt could not in any event have been a due course holder because the notes in question were not negotiable in form; and, second, that there was no showing, assuming the notes to be negotiable, that respondent was a due course holder, and that appellant was entitled to introduce the offered proof without first introducing evidence tending to prove that respondent was not a due course holder.

The form of the notes has been hereinabove set out. Appellant maintains that a note in this form is not negotiable because it is not a promise to pay "a sum certain in money," within section 1705, R. C. 1919. Appellant's theory is that since the note runs for one year and interest is payable semiannually at 8 per cent with a provision that any interest not paid when due shall bear interest at the rate of 10 per cent until paid, it is impossible to determine the amount necessary to pay the note at maturity, for the reason that it is impossible to know in advance whether the maker of the note will pay the semiannual interest when it comes due at the end of the first 6-month period. If she does, the amount necessary to retire the note at maturity would be principal and 8

per cent interest thereon for 6 months; if she does not and continues in such default until maturity, then the amount necessary to retire the note at maturity would be the principal, plus interest at 8 per cent for one year, plus interest at 10 per cent for 6 months on half of that interest.

In this view we are unable to agree with appellant.  It is true that there is a statement in Sharpe v. Shoenberger, 44 S. D. 402, 184 N. W. 209, which would sustain this view.  However, in the Shoenberger Case the term of the note was 6 months only, and any statement as to the negotiability of the note, if it had been payable more than six months after its date, was dictum only, and that dictum we now disapprove.  In a note in this form, if the maker complies with his contract, there is no question about the amount necessary to pay the note at maturity, and if he does not so comply the matter is one of simple computation.  We think that there is no commercial uncertainty in the notes in question, and approve the language of Judge Amidon when he said:

"The rule requiring certainty in commercial paper was a rule of commerce before it was a rule of law.  It requires commercial, not mathematical certainty.  An uncertainty which does not impair the functions of negotiable instruments in the judgment of business men ought not to be regarded by the courts."  Cudahy Packing Co. v. State National Bank, 134 F. 538, 67 C. C. A. 662, at 666.

We hold that the notes are negotiable in form.  Brown v. Vossen, 112 Mo. App. 676, 87 S. W. 577; Barker v. Sartori, 66 Wash. 260, 119 P. 611; Commercial Credit Co. v. Nissen, 49 S. D. 303, 207 N. W. 61.

[2]  In their second contention, however, we think appellants are correct.  It is to be observed that respondent declared as absolute owner of the note in question.  It developed by respondent's own testimony that it took the notes in question as collateral to indebtedness due it from the James Valley Bank.  Respondent, of course, should have declared in accordance with the facts.  Respondent says there is a presumption, when it appears that a note was taken as collateral security, that the amount of the debt thereby secured equals or exceeds the amount of the collateral.  This, perhaps, is true as of the time the collateral is taken, but in this case respondent is seeking to stand as a due course holder and to enforce a mortgage lien for the full amount of the notes sued

upon. As against the defenses pleaded in this case, if proved, respondent cannot enforce a mortgage lien for any amount in excess of the amount now due it from the James Valley Bank upon the obligation to which the paper in suit was taken as collateral, regardless of what amount may have been due upon that paper when the collateral was taken.

[3] Furthermore, the defenses pleaded by the Jeffersons were sufficient to constitute defects in the title of James Valley Bank which negotiated these notes to respondent. See section 1759, R. C. 1919. Section 1763, R. C. 1919, reads as follows:

"*Prima Facie Holder.* Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

[4-6] By the great weight of authority when evidence establishes that the title of the party negotiating the instrument was defective, the holder claiming to be a due course holder must make this claim good by the preponderance of the evidence. See Brannan, Negotiable Instruments Law (4th Ed.), page 531, and cases cited. The holder of a negotiable instrument may sue thereon, regardless of whether or not he is a due course holder. See section 1755, R. C. 1919. And the holder of a promissory note suing thereon need not plead nor prove in the first instance that he is a holder in due course; whether he is a holder in due course as distinguished from a mere holder does not become material until he is faced with defenses to the paper which are good against a holder, but not good against a holder in due course, and at that stage of the proceedings the burden is placed upon the plaintiff by section 1763, supra, to prove that he is a due course holder. In this case, plaintiff, assuming that its evidence was aided by a presumption that the amount of the debt for which the paper in suit was taken as collateral equaled or exceeded the amount of collateral at the time of the taking, had neither pleaded nor proved all the facts necessary to constitute it a holder in due course. See section 1756, R. C. 1919. The evidence offered by appellants should have been received and thereafter respondent should have

been permitted to prove that it was a holder in due course and the amount and extent to which it was entitled to rank as a holder in due course, which could not in any event exceed the amount still due to it from the James Valley Bank upon the paper to which the notes in suit were taken as collateral.

The trial court clearly erred in rejecting the offered testimony, and the judgment and order appealed from must be and they are reversed and the case remanded for new trial.

GATES, POLLEY, SHERWOOD, and BURCH, JJ., concur.